IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL Z. MALDONADO and
BRANDON C. ARMSTRONG,

                Petitioners,                     OPINION and ORDER

          v.                                            08-cv-308-bbc

BRADLEY HOMPE, Warden,
STANLEY CORRECTIONAL
INSTITUTION and WISCONSIN
DEPARTMENT OF CORRECTIONS,

                Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this proposed civil action for injunctive and monetary relief, petitioners Daniel Z. Maldonado and Brandon C. Armstrong contend that prison officials denied their constitutional right of access to the courts by preventing them from working together, denying them certain legal supplies and delaying their payment of court fees; in addition, petitioner Armstrong contends that prison officials violated his free speech rights by assaulting him with nightsticks. (Although petitioners' pleading is titled a "petition for an emergency supervisory writ," it is a complaint about violations of petitioners' civil rights and will be construed as an action brought pursuant to 42 U.S.C. § 1983.) Petitioners have

1

requested leave to proceed in forma pauperis and have paid the initial partial filing fee.

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. Haines v. Kerner, 404 U.S. 519, 521 (1972). However, if the litigant is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed if the prisoner has had three or more lawsuits or appeals dismissed for lack of legal merit (except under specific circumstances that do not exist here), or if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915(e)(2).

Because respondents Stanley Correctional Institution and Wisconsin Department of Corrections are not "persons" under § 1983 and because respondent Hompe was not personally involved in the alleged constitutional violations, no respondent named can be held liable for the alleged violations. Therefore, petitioners' complaint must be dismissed.

Before turning to the facts, I must address two procedural issues. First, petitioner Armstrong has moved to "amend" the complaint to retract petitioner Maldonado's assertion that petitioner Armstrong was a licensed paralegal, dkt. #7. That motion will be granted; dkt. #7 will be treated as a supplement to the original complaint. Next, petitioners (mostly petitioner Maldonado) have filed numerous documents in addition to their pleading in this case and in two other cases of petitioner Maldonado's still pending before the court, case

numbers 08-cv-279-bbc and 08-cv-396-bbc. Many of these documents are labeled "motions to supplement" the complaint or "the record." To the extent petitioners are seeking to supplement their complaint, these motions will be denied. Each proposed supplement is either irrelevant to the claims asserted or would violate Fed. R. Civ. P. 8 by making the complaint unmanageable.

In his complaint, petitioners allege the following facts.

ALLEGATIONS OF FACT

A.  Parties

Petitioners Daniel Z. Maldonado and Brandon C. Armstrong are inmates at the Stanley Correctional Institution. Respondent Bradley Hompe is the warden of respondent Stanley Correctional Institution, which is a state prison in Stanley, Wisconsin. Respondent Department of Corrections is the state agency in charge of the state prison system.

B.  Separation of Petitioners

On April 24, 2008, petitioners first met as inmates at the Stanley Correctional Institution. After talking, they realized they had very similar stories. Both had had Christopher S. Nolet as a probation officer, been "conned and disenfranchised" while on probation and had had their probation revoked. Moreover, both had brought John Doe

3

investigative actions against Nolet. Petitioners began working intensely together on their cases. They would meet outdoors in the unit courtyard. Eventually, petitioner Maldonado "retained" petitioner Armstrong as his "official paralegal." However, by the first week of May, 2008, petitioners were told that they could not take their legal materials outdoors.

Petitioners could not find any rules prohibiting legal work in the courtyard. Petitioners met the unit manager, Mr. Melbeck. Petitioner Armstrong had a 45-minute meeting with Melbeck, and asked that petitioner Maldonado be moved in with him to "remedy" the problem. Melbeck refused; however, after some wrangling, he agreed to allow petitioners to work together outside. At the same time, the unit 1 manager investigated petitioners, and discovered that petitioner Maldonado had a John Doe hearing against his probation officer. Since then, every request to move petitioners together in the same cell has been "vehemently" denied. On or about May 7, 2008, petitioner Maldonado was moved from unit 1 to unit 3. Petitioners had a harder time communicating with each other about their cases. They tried to "circumvent" this separation by coordinating nurse visits, visits to the notary and copy day in the library.

### C. Petitioner Maldonado put in Segregation

On May 14, 2008, petitioner Maldonado approached his unit corrections officer, Mr. Heisenger. Heisenger had worked before on unit 1, where petitioners could be seen together

4

outside with papers, files and books, discussing law. Petitioner Maldonado asked Heisenger if he could go over to "wing A" to retrieve a few legal documents from petitioner Armstrong that he needed as exhibits to a "supervisory writ." Heisinger gave petitioner Maldonado permission to go to wing A. Petitioner Armstrong is in wing A of unit 1 and petitioner Maldonado is in wing C of unit 3.

Petitioner Maldonado went to unit 1 with two manila envelopes and asked to knock on petitioner Armstrong's door, and was given permission. However, before he could, he was stopped by another correctional officer, who asked if he had permission to be in that unit. The officer then called Heisinger, who said he did not give petitioner Maldonado permission to come to unit 1, only to wing A in unit 3. Petitioner Maldonado was arrested for being in an unauthorized area, handcuffed and taken to segregation.

The manila envelopes were taken from petitioner Maldonado. Petitioner Armstrong saw what happened and told the officers that the envelopes were his legal materials, to be mailed to the Wisconsin Supreme Court. In the manila envelopes were motions for a supervisory writ, notarized that day. The envelope was not yet sealed because petitioner Maldonado had yet to put his documents in the envelope. All the documents had been prepared in WordPerfect and saved in petitioners' "My Documents" accounts and printed out, costing a total of $2.50.

Petitioner Maldonado was taken to segregation and strip-searched. He told the

5

officers that he would refuse food and water until the deputy warden came down to meet with him because petitioners' constitutional rights were being violated. The officers ignored him. Petitioner Maldonado filed several inmate request and medical request slips to assorted offices. He sent the following request to respondent Hompe's office:

> The protected and entitled constitutional rights of Daniel Maldonado and Brandon Armstrong continue to be violated and discarded by staff of the Stanley Institution. This abuse is causing Mr. Maldonado tremendous mental dur[]ess. The DOC is slyly tring to obstruct our "access to the courts." As of 5/14/08, I was wrongfully placed in the "hole" and I will be refusing all food as I protest this unjust action, and will continue to be on a "hunger strike" until I receive an in-person and private meeting with either you or your deputy warden and Mr. Brandon Armstrong . . ., all together.

Respondent Hompe did not respond to petitioner Maldonado's complaint. Instead, he directed his secretary to send out a "generic" response telling petitioner Maldonado to follow the proper chain of command and directing him to the propr person to whom he should complain. Petitioner Hompe did not sign that letter. Petitioner Maldonado sent out a total of 12 different inmate requests and medical request slips to various prison officials that day, all regarding the same matters.

One day later, on May 15, 2008, petitioner Maldonado sent out a request to the business office explaining that he was "still" in segregation waiting for his legal materials, and that he did not have any paper to write the courts. The office refused to supply legal materials, telling him to order supplies from canteen. Paper is not available on the canteen

6

form.  Later, officers denied yet another request of petitioner Maldonado's for paper.

D. Delayed Payment of Petitioner Maldonado's Filing Fees for Petition for Writ of Habeas Corpus and Writ of Mandamus

On May 8, 2006, petitioner Maldonado asked that filing fees be paid in two separate cases.  The filing fees were not paid until six days later.

E. Petitioner Armstrong's "Retaliation" Claim

On or about May 18, 2008, petitioner Armstrong was in a 24-hour lockdown cell. He was assaulted by night sticks to the lower part of his body.  Petitioner Maldonado learned of this assault by watching through his cell window into an examination room and overhearing petitioner Armstrong talk of the assault to a nurse.  Petitioner Maldonado filed a complaint, but it was rejected, in part because it was about another inmate's treatment. Afterward, petitioner Maldonado's cell window was covered.  On May 20, petitioner Armstrong shouted to petitioner Maldonado that they were moving him again.

OPINION

Petitioners contend that prison officials violated their right of access to the courts by interfering with their ability to communicate with each other regarding their similar cases,

7

retaining a manila envelope containing "time-sensitive" court documents, refusing to provide petitioner Maldonado with legal supplies for several days while he was in segregation and delaying payment of petitioner Maldonado's filing fees for six days.  In addition, petitioner Armstrong contends that prison officials retaliated against him for some unidentified protected activity by assaulting him with night sticks.

First, petitioners named the Stanley Correctional Institution and the Wisconsin Department of Corrections as respondents.  Neither of these respondents is a "person" under 42 U.S.C. § 1983.  Will v. Michigan Department of State Police, 491 U.S. 58, 66-67 (1989). Because liability under § 1983 attaches only to "persons," petitioners' claims against both of these respondents must be dismissed.

The only remaining respondent is Bradley Hompe.  Neither petitioner alleges that respondent Hompe, who is the warden of the prison, was directly involved in any of the actions about which petitioners complain.  To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.  Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994).  At the very least, a prison official must know about unconstitutional conduct and facilitate it, approve it, condone it, or turn a blind eye to it to satisfy the personal responsibility requirement of § 1983.  Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

Respondent Hompe's only alleged involvement is receiving a letter from petitioner

Maldonado containing conclusory allegations about the violation of petitioners' right of access to the courts and directing his secretary send a letter referring petitioner Maldonado to the proper official in the chain of command to receive such a complaint. The conclusory nature of petitioner Maldonado's letter does not allow an inference to be drawn that respondent Hompe "knew about" the unconstitutional conduct because the conduct itself was never described in the letter. Moreover, respondent Hompe's directive that petitioner Maldonado follow the chain of command does not allow an inference to be drawn that he "turned a blind eye" or otherwise facilitated the alleged violation; respondent Hompe was given no basis in the letter to believe that the proper official in the chain of command would fail to address petitioner Maldonado's complaint. Because the complaint does not allow an inference to be drawn that respondent Hompe was personally involved in any wrongdoing, petitioners' claims against him must be dismissed.

Even if petitioners had identified the officials responsible for interfering with their ability to work together, they would not state a claim of constitutional proportion. The constitutional right of access to the courts is actionable only if "the plaintiff has suffered an injury over and above the denial." Walters v. Edgar, 163 F.3d 430, 433-34 (7th Cir. 1998) (citing Lewis v. Casey, 518 U.S. 343 (1996)). A plaintiff is injured by denial of access where such denial frustrates a "separate and distinct right to seek *judicial relief* for some wrong." Christopher v. Harbury, 536 U.S. 403, 415 (2002) (emphasis added). At a minimum, a

9

complaint alleging a denial of access to the courts must describe an underlying cause of action and how it has been *lost or impeded*. Id. at 415-16. Petitioners make no more than vague reference to the underlying action or actions supposedly affected, and do not suggest how the relief available in any of the actions has been lost or impeded by the actions of prison officials. Although petitioners complain of losing a manila envelope with "time sensitive" material, they allege that they had backups of that material saved on a computer and do not suggest that the delay has prejudiced any of their cases.

Also, denial of a prisoner's access to legal assistance is actionable only if such legal assistance is "necessary . . . for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Shaw v. Murphy, 532 U.S. 223, 231 n.3 (2001) (citing Lewis, 518 U.S. at 350-351)). An inmate "is not entitled to the assistance of a particular lay assistant." Gometz v. Henman, 807 F.2d 113, 116 (7th Cir. 1986). Much of petitioners' complaint relates to nothing more than denial of the assistance "of a particular lay assistant," which does not rise to the level of a constitutional violation of petitioners' right of access to the courts.

ORDER

IT IS ORDERED that:

1. Petitioners Daniel Z. Maldonado and Brandon C. Armstrong are DENIED leave

to proceed in forma pauperis on their claims that respondents Bradley Hompe, Stanley Correctional Institution and Wisconsin Department of Corrections violated their right of access to the courts when officials interfered with petitioners' ability to communicate with each other, denied petitioner Maldonado legal materials and delayed the payment of petitioner Maldonado's filing fees for six days, and on petitioner Armstrong's claim that respondents retaliated against him when prison officials assaulted him with a night stick. This case is DISMISSED with prejudice for petitioners' failure to state a claim upon which relief may be granted.

    2. Petitioners' motions to supplement his complaint or "the record," dkts. ##12-17, 20, 22, 23 and 27 are DENIED.

    3. Petitioners' motions to compel, dkts. ##3 and 11 and motion to transfer to another prison, dkt. #19, are DENIED as moot.

    4. A strike will be recorded against each petitioner pursuant to § 1915(g) and Boriboune v. Berge, 391 F.3d 852 (7th Cir. 2004).

5. The clerk of court is directed to close the file.

Entered this 22nd day of September, 2008.

                              BY THE COURT:

                              /s/

                            _____
                            BARBARA B. CRABB
                            District Judge